## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL ONLEY,** | : | **Civil No. 1:13-CV-2833** |
| | : | |
| **Plaintiff,** | : | **(Judge Kane)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **CAROLYN W. COLVIN,** | : | |
| Acting Commissioner of | : | |
| Social Security | : | |
| | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction

In this case, the plaintiff, Michael Onley, appeals from the partially favorable decision of the Commissioner of Social Security awarding him benefits under Titles II and XVI of the Social Security Act after the Commissioner found that Onley was unable to work as of April 1, 2012.  The jurisdiction of this Court is invoked pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1383(c)(3) (incorporating 42 U.S.C. §405(g) by reference).  This matter has been referred to the undersigned United States Magistrate Judge for the preparation of a report and recommended disposition pursuant to the provisions of 28 U.S.C. §636(b) and Rule 72(b) of the Federal rules of Civil Procedure.

For the reasons stated herein, we recommend that the decision of the Commissioner be **AFFIRMED**.

## II.   Background and Procedural History

On November 4, 2011, Michael Onley presented to the emergency room complaining of pain and visual impairment in his right eye after two people jumped him and punched him hard in the face. (Admin Tr. 203). A CT scan of Onley's right orbital bones revealed fractures involving the floor and medial wall of the right orbit. (Admin Tr. 227-28). Onley underwent internal fixation surgery to repair the fracture on November 7, 2011. (Admin Tr. 222-225). Immediately after the surgery, Onley's visual acuity was checked and was found to be "good." (Admin Tr. 224). The record reflects that Onley did not seek out further medical care for complaints of eye pain and visual impairment – which he asserts relate back to the date of his injury – until February 21, 2012. (Admin Tr. 236). On examination, Onley's visual acuity in his right eye was measured as 20/40, and he was diagnosed with a dislocated cataract with vitreous prolapse. (Admin Tr. 237).

Between his injury and his decision to seek additional care in February 2012, Onley protectively filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act on January 24, 2012, and January 31, 2012. In both applications Onley alleged

2

that, as of September 30, 2011, he was unable to work due to vision problems in his right eye.  Both of Plaintiff's applications were initially denied on April 6, 2012. Onley then requested, and was granted, an opportunity to have his claims re-evaluated following an administrative hearing.

Also in early April 2012, Plaintiff's treating ophthalmologist, Dr. Coar, referred Onley to a  second ophthalmologist, Dr. Tipperman, in Philadelphia due to the atypical presentation of his dislocated cataract.  (Admin Tr. 268).  At that time, the visual acuity in Onley's right eye was measured as 20/50.  Id.  The second ophthalmologist evaluated Onley in July 2012, diagnosed Plaintiff with a cataract and nuclear sclerosis in his right eye, and referred him to a retina doctor for surgery. (Admin Tr. 272).   Onley underwent a pars plana vitrectomy and pars plana laminectomy without complication.  (Admin Tr. 260-61).  In September 2012, during a follow up examination, the visual acuity of Plaintiff's right eye was measured as 20/400.  (Admin Tr. 291).  It was noted that Onley was "coming along very well," and that some of his vision issues may be related to refractive error.  Id.  In November 2012, during a follow-up exam regarding Plaintiff's continuing difficulties, he was assessed with pseudophakia of the right eye, and his ophthalmologist expressed concern that Onley may have damage to the optic nerve due to his prior orbital

3

trauma.  (Admin Tr. 276).  Onley was advised that he should not expect his visual impairment to improve in the future.  (Admin Tr. 44).

On May 1, 2013, Onley, with the assistance of counsel, appeared and testified at a hearing before Administrative Law Judge ("ALJ") Michelle Wolfe in Wilkes-Barre, Pennsylvania.  Impartial vocational expert ("VE") Karen Kane also appeared and testified.

During the hearing, Onley testified that, contrary to his hospital records, he got injured on October 3, 2011.  (Admin Tr. 41).  Plaintiff reported that, as a result of his visual impairment, his balance is impaired and he gets periodic headaches.  (Admin Tr. 44).  Onley asserted that since July 2012, he has had only "slight" vision in his right eye, but admits that he has no problems with his left eye.  (Admin Tr. 45).  Due to these difficulties, Onley reported that he cannot read, often trips over objects, has difficulty grocery shopping without assistance because he cannot read labels, (Admin Tr. 46, 51).  Plaintiff reported that vision in his right eye is not expected to improve.  (Admin Tr. 47. 52).  Onley also testified that he cannot lift or carry object weighing more than ten pounds due to a hip replacement in 1998 and because heavier weights strain his eye.  (Admin Tr. 52).

On May 9, 2013, the ALJ issued a favorable decision in which she found that, as of April 1, 2012, Onley was under a disability as defined by the Social Security

4

Act.  In her decision, the ALJ found that Onley met the insured status requirements

of Title II of the Social Security Act through September 30, 2014, and proceeded

through each step of the five step sequential evaluation process. (Admin Tr. 25).  At

step one, the ALJ found that Onley did not engage in any substantial gainful activity

between his alleged onset date and the date of decision.  Id.  At step two, the ALJ

found that Plaintiff had no medically determinable impairment prior to November 4,

2011.  (Admin Tr. 25-26).  She did, however, find that as of November 4, 2011,

Onley had the medically determinable severe impairments of a comminuted displaced

blowout fracture of the right orbit status post reduction and internal fixation of

fracture; dislocated cataract with vitreous prolapse; subluxed crystalline lens; and

pseudophakia right eye. (Admin Tr. 26).  At step three, the ALJ found that the above

medically determinable impairments did not meet or medically equal the severity of

one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I, either

individually or combined.  (Admin Tr. 26-27).

Before proceeding to step four, the ALJ found that Onley had the residual

functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§

404.1567(b) and 416.967(b) except:

> the claimant can climb ramps but the use of stairs should be limited to
> entering and leaving the worksite and not part of job duties; no climbing
> of ladders ropes or scaffolds; occasional balancing and crawling; has

limited eyesight with the right eye and thus needs the ability to turn his head left, right, up and down to use his left eye; any instructions or directions should be able to be given orally; no required writing or log keeping; no data entry or working with monitors or computer screens; can use his hands to pick up, grasp, handle and finger items, but due to vision no working with small products for inspection type work or assembling small products; should avoid moderate exposure to hazards such as moving machinery and no unprotected heights.

(Admin Tr. 27).

At step four, the ALJ found that, as of November 4, 2011, Onley was unable to perform his past relevant work as a laborer or warehouse worker.  (Admin Tr. 30). At step five, the ALJ made findings with respect to each of Plaintiff's vocational factors.   The ALJ found that, though Onley's chronological age was fifty-four (approaching advanced age) between November 4, 2011 and October 2012, a non-mechanical application of the age classifications required the application of a higher age category (advanced age) beginning April 1, 2012.  Id.  The ALJ also found that Onley has a high school education, and that Plaintiff's past relevant work was unskilled.  (Admin Tr. 31).  Considering these factors together with the above RFC, the ALJ found that, between November 4, 2011, and April 1, 2012, when Plaintiff's vocational age classification was fifty-four, Onley could perform the duties of a laundry folder (DOT 369.687-018) and maid-type cleaner (DOT 323.687-014). (Admin Tr. 31-32).  The ALJ also found that, collectively, these two occupations

existed in approximately 700 jobs in the regional economy. Id. Accordingly, the ALJ found that Onley was "not disabled" between November 4, 2011, and April 1, 2012. Id. However, once Plaintiff's vocational profile was consistent with that of a fifty-five year old worker on April 1, 2012, medical-vocational rule 202.04 directed a finding of "disabled" based solely on Plaintiff's exertional limitations. (Admin Tr. 32). Thus, the ALJ found that Plaintiff was disabled beginning April 1, 2012, and awarded benefits as of that date. Id.

Onley requested review of the ALJ's partially favorable decision awarding benefits by the Appeals Council. Plaintiff also submitted new evidence to the Appeals Council that was not before the ALJ when she rendered her decision. On September 23, 2013, the Appeals Council denied Onley's request for review.

On November 20, 2013, Plaintiff initiated this action by filing a complaint. (Doc. 1). On February 25, 2014, the Commissioner responded by filing an Answer. (Doc. 11). Together with her Answer, the Commissioner filed a complete copy of the administrative record. (Doc. 12). Having been fully briefed by the parties, this matter is now ripe for disposition. (Docs. 17, 18, 25).

### III.   Discussion

Onley contends that remand is required in this case because the ALJ's decision at step five of the sequential evaluation process is not supported by substantial

evidence.  His argument is threefold.  First, Plaintiff asserts that the ALJ failed to consider whether a borderline age situation requiring the non-mechanical application of the regulatory age classifications existed during the entire eleven month period between his alleged onset date and fifty-fifth birthday in accordance with 20 C.F.R. §§404.1563(b) and 416.963(b) – and instead only applied the age classifications non-mechanically to the six month period before Plaintiffs fifty-fifth birthday.  (Doc. 17 pp. 9-18; Doc. 25 pp. 5-10).  Second, Plaintiff asserts that VE's testimony cannot be considered substantial evidence at step five because she did not identify a substantial number of *occupations* that Plaintiff could still perform.  (Doc. 17 pp. 18-22; Doc. 25 pp. 1-5).  Third, Plaintiff asserts that the ALJ improperly assessed the extent to which Plaintiff's occupational base under grid rule 202.13 was eroded by his additional visual and postural limitations.  Id.  In response, the Commissioner contends that the ALJ's decision is in accordance with all of the relevant Social Security Regulations and is supported by substantial evidence.

A.    **Standards of Review–The Roles of the Administrative Law Judge and This Court**

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators–the ALJ and this Court.  At the outset, it is the responsibility of the ALJ in the first instance to determine whether

a claimant has met the statutory prerequisites for entitlement to benefits.  To receive

disability benefits, a claimant must present evidence which demonstrates that the

claimant has an inability to "engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see

also 20 C.F.R. §§404.1505(a), 416.905(a).

Furthermore,

[a]n individual shall be determined to be under a disability only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for his [or her], or whether he [or she] would be hired if he [or she] applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. §1382c(A)(3)(B); see also 20 C.F.R.

§§404.1505(a), 416.905(a).  Last, to qualify for benefits under Title II of the Social

Security Act, a claimant must also show that he or she contributed to the insurance

program and became disabled prior to the date on which he or she was last insured.

42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

## 1.   The Five-Step Sequential Evaluation Process

In making this determination the ALJ employs a five-step evaluation process

to determine if a person is eligible for disability benefits. See 20 C.F.R. §§ 404.1520,

416.920; see also Plummer  v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  If the ALJ

finds that a Plaintiff is disabled or not disabled at any point in the sequence, review

does not proceed any further.  See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  As

part of this analysis the ALJ must sequentially determine:  (1) whether the claimant

is engaged in substantial gainful activity; (2) whether the claimant has a severe

impairment;  (3)  whether  the  claimant's  impairment  meets  or  equals  a  listed

impairment; (4) whether the claimant's impairment prevents the claimant from doing

past relevant work; and (5) whether the claimant's impairment prevents the claimant

from doing any other work.  Id.

Before considering step four in this process, the ALJ must also determine the

claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e).

RFC is defined as "that which an individual is still able to do despite the limitations

caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112,

121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§ 404.1545, 416.945.  In

making this assessment, the ALJ considers all of the claimant's impairments, including any medically determinable non-severe impairments.   20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).   This disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that he or she is unable to engage in past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

The ALJ's disability determination must also meet certain basic procedural and substantive requirements.   Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination.  Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707.  In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis

for his finding." <u>Schaudeck v. Comm'r of Soc. Sec.</u>, 181 F.3d 429, 433 (3d Cir. 1999).

### 2. Guidelines for the Application of the Medical-Vocational Rules in Cases Involving a Combination of Exertional and Nonexertional Impairments

The medical-vocational guidelines, or "grids," are rules prepared by the Commissioner which evaluate a claimant's ability to work by matching the claimant's age, education and work experience with his or her work capability.  20 C.F.R. Part 404, Subpart P, Appendix II.  Each individual rule sets forth a presumption regarding whether jobs exist in significant numbers in the national economy given the claimant's individual limitations.  <u>Id.</u>  During the course of the final step of the sequential evaluation, an ALJ must make findings of fact as to the claimant's RFC and vocational factors.  These findings of fact are subject to rebuttal and a claimant may present evidence to refute such findings.  <u>See</u> 20 C.F.R. Part 404, Subpart P, Appendix II §200(a).

The grids are divided into five residual function categories based on the definitions set forth in 20 C.F.R. §§404.1567 and 416.967.[1]  <u>Id.</u>  Each residual

---

[1] The residual function categories of "heavy" and "very heavy" are both addressed in grid rule 204.00.  <u>See</u> 20 C.F.R. Part 404, Subpart P, Appendix II §204.00.

12

function category is subdivided by age, education, and work experience.  Id.  The Commissioner can determine whether a claimant is disabled under the grids by matching the claimant's age, education, and work experience with his RFC.  Id. There are two situations, however, in which the grids may not be applied.  First, the grids may not be applied conclusively where the claimant does not fall squarely within all of the criteria of a specific rule, i.e., because his or her exertional limitations prevent the performance of the full range of work within a regulatory RFC category or because a claimant does not fit sparely within a particular vocational classification.  See 20 C.F.R. Part 404, Subpart P, Appendix II §200(a) ("Where any one of the findings of fact does not coincide with the corresponding criterion of a rule, the rule does not apply ..."); SSR 83-12 ("The table rules do not direct such conclusions where an individual's exertional RFC does not coincide with the exertional criteria of any one of the exertional ranges...").  Second, where the claimant has either solely nonexertional impairments, or a mixture of exertional or nonexertional impairments, the grids alone cannot be used to determine the claimant's ability to perform "other work," because the presence of any nonexertional impairment reduces the potential occupational base accounted for by the grids.  See 20 C.F.R. Part 404, Subpart P, Appendix II §200(e)(2); see also SSR 83-14; SSR 85-15.

Where a claimant's exertional capacity falls between two rules, or "where [a claimant] has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations," the grids can be used only as a framework for the ALJ's analysis.  20 C.F.R. Part 404, Subpart P, Appendix II §200(e); see also SSR 83-12; SSR 83-14.  In such cases, the grids are first considered in determining whether a finding of "disabled" may be possible based on strength limitations alone under the applicable grid rule.  See SSR 83-12; SSR 83-14.  However, if the grid rule applicable to the claimant directs a finding of "not disabled," the ALJ should consult a vocational resource, such as a VE, to ascertain whether a significant number of jobs remain in the national or regional economy despite any erosion to the occupational base of the grid rule due to the additional exertional or nonexertional limitation.  Id.; see also Sykes v. Apfel, 228 F.3d 259, 266 (3d Cir. 2000)("the practice of the ALJ determining without taking additional evidence [on] the effect of the nonexertional impairment on residual functional capacity cannot stand.").

Similarly, a claimant's vocational factors may also have a significant impact upon his or her occupational base.  For example, the vocational factor of age is divided into three classifications.  20 C.F.R. §§ 404.1563, 416.963.  A claimant under age 50 is considered to be a "younger person;" generally, age is not considered to seriously affect a younger person's ability to adjust to other work.  Id.  A claimant

between the ages of 50 and 54 is "closely approaching advanced age;" age combined with a severe impairment and limited work experience is may seriously affect a 50-54 year old claimant's ability to adjust to other work.  Id.  A claimant 55 or older is of "advanced age;" advanced age significantly affects a person's ability to adjust to other work.  Id.

The Social Security regulations pertaining to the evaluation of age as a vocational factor provide that the above age classifications should be applied "non-mechanically" in borderline situations.  20 C.F.R. §§ 404.1563(b), 416.963(b).  A borderline situation exists where a claimant is within a few days or few months of reaching an older age category, and using the older age category would result in a determination that the claimant is disabled.  Id.; see also Soc. Sec. Admin., Hearings, Appeals, and Litigation Law Manual, II-5-3-2 (2003) available at 2003 WL 25498826.  There is no bright line rule, however, to determine when a borderline situation is present. Istik v. Astrue, No. 02:07-CV-1468, 2009 WL 382503, at *4(W.D.Pa. Feb. 13, 2009); see e.g., Ludivico v. Astrue, No. 08-322, 2008 WL 5134938, at*11 (W.D.Pa. Dec. 5, 2008)(finding that nine months is the outer perimeter of what constitutes a borderline case); Bennett v. Sullivan, No. 89-1907, 1990 WL 122912, at *5(E.D.Pa. Aug 21, 1990)(noting that several courts have found

that a borderline situation exists when a claimant is within one year of the next age category).

In potentially borderline cases, the ALJ must make factual findings to determine whether a borderline case exists and, if so, determine whether the specific circumstances of the case warrant the application of an age category which exceeds Plaintiff's chronological age. See e.g. Kane v. Heckler, 776 F.2d 1130, 1134 (3d Cir. 1985)(remanding where the ALJ did not make any findings of fact with respect to the non-mechanical application of the age classifications in accordance with 20 C.F.R. § 404.1563(b) in a borderline age situation). The Social Security Administration's Hearings, Appeals, and Litigation Manual ("HALLEX") provides that, to make this determination the ALJ should use a "sliding scale" approach that requires the claimant to show progressively more vocational adversity to support the use of a higher age category as the time period between Plaintiff's chronological age and his or her attainment of the higher age category lengthens. HALLEX § II-5-3-2. Absent a showing of additional adversities justifying the use of the higher age category, the ALJ will use the claimant's chronological age – even when the time period is only a few days.[2] Id.

_____

[2] As noted by the Commissioner, HALLEX also provides that, in a borderline age situation, an ALJ "need not explain his or her use of the claimant's chronological

### 3.   Judicial Review of ALJ Determinations–Standard of Review

Once the ALJ has made a disability determination, it is then the responsibility of this Court to independently review that finding.  In undertaking this task, this Court applies a specific, well-settled and carefully articulated standard of review.  In an action under 42 U.S.C. § 405(g) or 42 U.S.C. §1383(c)(3) to review the decision of the Commissioner of Social Security denying a claim for disability benefits, the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"  42 U.S.C. § 405(g).

The "substantial evidence" standard of review prescribed by statute is a deferential standard of review.  Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).  When reviewing the denial of disability benefits, we must simply determine whether the denial is supported by substantial evidence.  Brown v. Bowen, 845 F.2d 1211,

---

age."  HALLEX §II-5-3-2.  The Commissioner asserts that the ALJ was not required to discuss the use of Plaintiff's chronological age from November 4, 2011 to April 1, 2012.  Prior and subsequent to the publication of HALLEX §II-5-3-2, however, the Third Circuit held that, in a potentially borderline case, the record must contain factual findings relevant to the 20 C.F.R. §§ 404.1563(b) and 416.963(b) inquiry into whether a claimant is entitled to consideration under the higher age classification.  See Lucas v. Barnhart, 184 F.App'x. 204, 208 (3d Cir. 2006); see also Hitchcock v. Comm'r of Soc. Sec. Admin., No. 09-551, 2009 WL 5178806 at *10 (W.D.Pa. Dec. 21, 2009)(holding that the failure to address 20 C.F.R. §§ 404.1563(b) and 416.963(b) requires remand despite the HALLEX provision advising that no explanation is necessary because HALLEX is an internal guidance tool and has no legal force it is not judicially binding.)

1213 (3d Cir. 1988); see also Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). It is less than a preponderance of the evidence but more than a mere scintilla of proof. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Plummer, 186 F.3d at 427 (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)).

A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064(3d Cir. 1993). However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966). In determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Leslie v. Barnhart, 304 F.Supp.2d 623,

627 (M.D.Pa. 2003). The question before this Court, therefore, is not whether Plaintiff has been disabled since November 4, 2011, but whether the Commissioner's finding that he was not disabled prior to April 1, 2012, is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D.Pa. 2012)("[T]he court has plenary review of all legal issues . . . .").

## B.   The ALJ Properly Addressed the Borderline Age Situation

Onley asserts that–despite the favorable non-mechanical application of the age classifications to his case between April 1, 2012, and the Plaintiff's fifty-fifth birthday in October 2012 – the ALJ failed to consider whether a borderline age situation existed between November 4, 2011, and April 1, 2012. Onley asserts that, because there are no factual findings relevant to whether a borderline situation existed prior to April 1, 2012, this case must be remanded. We disagree.

In her decision, the ALJ found that "[p]rior to the established disability onset date, the claimant was an individual closely approaching advanced age.  Applying the age categories non-mechanically*, and considering the additional adversities in the case, on April 1, 2012*, the claimant's age category changed to an individual of advanced age."  (Admin Tr. 30)(emphasis added.)  This explicit reference to the "additional adversities" which Onley confronted in the Spring of 2012 demonstrates that the ALJ did engage in a fact-bound assessment of the specific circumstances in Onley's case.  The ALJ explained that, because Onley was faced with additional vocational adversities, including the deterioration of his condition that necessitated surgery and the fact that he was told that his vision would not improve, Onley's vocational profile was more like that of a person of "advanced age" than the age classification that corresponded with his chronological age on that date.  Id.

In support of his position that a remand is compelled here, Plaintiff relies on Kane v. Heckler, 776 F.2d 1130, 1134 (3d Cir. 1985), in which the Third Circuit remanded where the ALJ made no factual findings on the issue of whether a borderline situation existed.  776 F.2d at 1134.  Unlike in Kane, however, the record in this case shows that the ALJ expressly considered whether a borderline situation existed under 20 C.F.R. §§ 404.1563 and 416.963, and set the date of disability taking into account both Onley's chronological age and the "additional adversities" which

20

he confronted in the Sporing of 2012.   Accordingly, because the record contains factual findings with respect to the ALJ's borderline age analysis, we find that the ALJ gave adequate consideration to this issue.

Moreover, we also find that substantial evidence supports the ALJ's determination that the medical evidence did not warrant the application of a higher age classification from an earlier date.   Specifically, on November 7, 2012, immediately following surgery Plaintiff's visual acuity was checked and found to be "good."  (Admin Tr. 224).   Plaintiff told Dr. Tipperman that the onset of his symptoms was "gradual."  (Admin Tr. 270).   There is no evidence of follow up care for visual impairment until February 21, 2012, when he reported throbbing pain, occasional blurry vision, and sensitivity to sunlight. (Admin Tr. 236-37).   His visual acuity in his right eye on that date was 20/40.   Id.   Plaintiff was diagnosed with a dislocated cataract and vitreous prolapse and was advised that it was likely he would need corrective surgery "eventually."   Id.   Plaintiff was seen again on March 22, 2012, and reported that his pain was not as bad.  (Admin Tr. 238).   On April 3, 2012, Plaintiff's visual acuity in his right eye was reduced to 20/50.  (Admin Tr. 268).   In July 2012, Plaintiff underwent surgery to resolve his dislocated cataract.  (Admin Tr. 260-61).   During a follow-up examination, it was noted that Plaintiff's visual acuity in his right eye had deteriorated further, and was now 20/400.  (Admin Tr. 291).

21

Accordingly, we find that there is substantial evidence to support the ALJ's interpretation of the evidence – that because Plaintiff gradually lost visual acuity he was not immediately subject to the vocational adversities that warranted the application of the "advanced age" classification.

### C.   The ALJ was not required to Identify a Significant Number of Occupations

At Onley's administrative hearing, the VE testified that an individual with the same RFC and vocational factors as Plaintiff retained the necessary physical and mental capacity to perform the occupations of laundry folder and maid-type cleaner. (Admin Tr. 68).  The VE also testified that there were approximately 200 jobs for a laundry folder in northeastern Pennsylvania, and approximately 500 jobs in northeastern Pennsylvania for a maid-type cleaner.  Id.  Plaintiff suggests that the number of occupations (two) identified by the ALJ is not sufficient, thus the ALJ has failed to meet her burden at step five.  (Doc. 17 p. 18).  This argument, however misconstrues the regulatory framework promulgated by the Social Security Administration for making a determination of disability.  See Henderson v. Soc. Sec. Admin., 87 Fed.Appx. 248, 253 (3d Cir. 2004).  In particular, this argument confuses jobs and occupations, two terms that have different meanings under social security regulations.  Jobs are individual positions available in the regional and national economy, and identify positions which a claimant could fill.  Occupations, in turn,

describe broader fields of endeavor, each of which may have numerous jobs vacancies. For claimants, the significant question is not how many occupations one might be able to undertake, but rather how many jobs are available to the claimant given that claimant's limitations. Indeed, the Social Security regulations specifically require that the Commissioner identify "a significant number of jobs (in one or more occupations) having requirements which [the claimant is] able to meet with [his or her] physical or mental ability and vocational qualifications." 20 C.F.R. §§ 404.1566(b), 416.966(b)(emphasis added). Plaintiff has failed to cite any authority that supports his suggestion that where the ALJ has found a claimant capable of performing a significant number of jobs in the national economy, a claimant should be rendered disabled merely because these jobs only fall within a few occupations. Plaintiff does not appear to dispute that the ALJ properly concluded that 700 jobs in the regional economy is a "significant number."

**D.** **The ALJ Properly Assessed the Extent to Which Plaintiff's Occupational Base was Eroded by his Additional Exertional and Nonexertional Limitations**

Finally, Onley alleges that the ALJ failed to properly assess the extent to which Plaintiff's occupational base under grid rule 202.13 for the period between November 4, 2011 and April 1, 2012, was further eroded by his visual impairment and postural limitations in accordance with SSRs 83-12 and 83-14 is also meritless. His argument

23

appears to be based upon VE testimony that Plaintiff's occupational base under grid rule 202.13 is "significantly" eroded by his additional exertional and nonexertional limitations. However, courts have found that where there is credible expert testimony that the claimant is qualified for a "significant number" of jobs that exist in the regional economy, it is immaterial that this number is a small percentage of the total number of jobs in a given area. See e.g., Hall v. Bowen, 837 F.2d 272, 275 (6th Cir. 1988).

Moreover, we find that the ALJ properly relied on the grids as a framework, and consulted a VE to determine the extent to which Plaintiff's occupational base under grid rule 202.13 was eroded as a result of Plaintiff's additional exertional and nonexertional limitations. See Henderson, 87 Fed.Appx. at 252-53 (finding that where the ALJ specifically consulted a VE to determine the available number of jobs in light of the fact that the claimant did not fall within a single category because of additional exertional limitations, he followed the mandates of SSR 83-12).

Here, the ALJ found that Plaintiff's ability to perform the full range of light work was eroded by various additional exertional and nonexertional limitations. (Admin Tr. 27). The ALJ then determined that grid rule 202.13 directed the conclusion of "not disabled." Because Plaintiff suffered from additional exertional and nonexertional limitations, the ALJ consulted a VE to determine the extent to

24

which the occupational base of grid rule 202.13 was eroded by Plaintiff's additional exertional and nonexertional limitations in accordance with SSRs 83-12 and 83-14. Though the VE testified that the occupational base under grid rule 202.13 was "significantly eroded" in terms of the number of occupations and positions available, the VE did identify that Plaintiff's occupational base included approximately 700 jobs in two occupations.  The ALJ found despite the erosion to the occupational base due to the additional exertional and nonexertional impairments, that an occupational base of 700 jobs was significant.   Accordingly, we find that the ALJ's step five determination that Plaintiff could perform "other work" that existed in significant numbers in the regional economy between November 4, 2011, and April 1, 2012, is supported by substantial evidence.

## IV.   Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the final decision of the Commissioner be **AFFIRMED**, and that Mr. Onley's request for the award of benefits, or in the alternative a new administrative hearing, be **DENIED**.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file

with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.  Finally, failure to timely object to this Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this 10th day of March, 2015.


***S/Martin C. Carlson***
Martin C. Carlson
United States Magistrate Judge